UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLE BENJAMIN HOOKER,

        Petitioner,

                                            CASE NO. 2:08-CV-11355
v.                                          JUDGE DAVID M. LAWSON
                                          MAGISTRATE JUDGE PAUL J. KOMIVES

JEFFREY WOODS,

        Respondent.[1]

_____/

# **REPORT AND RECOMMENDATION**

| | | |
|---|---|---|
| I. | RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. | REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | A.  *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | B.  *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| | C.  *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| | D.  *Prosecutorial Misconduct (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| |     1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| |     2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| |         a. Shifting Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| |         b. Bolstering . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |         c. Cumulative Effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | E.  *Sufficiency of the Evidence (Claim II.A)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| |     1.    *Great Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| |     2.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| |         a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| |         b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| | F.  *Newly Discovered Evidence (Claim II.B)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| | G.  *Introduction of Videotaped Statement (Claim II.C)* . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| |     1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| |     2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | H.  *Ineffective Assistance of Counsel (Claims II.D & III)* . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| |     1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| |     2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| |         a. Failure to Object to Introduction of Videotaped Statement . . . . . . . . . . . . . . . . . . | 23 |
| |         b. Failure to Object to Expert Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| |         c. Failure to Object to Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| | I.  *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| |     1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| |     2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 |
| | J.  *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |

---

[1]By Order entered this date, Jeffrey Woods has been substituted in place of Hugh Wolfenbarger as the proper respondent in this action.

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.   REPORT:

A.    *Procedural History*

1.    Petitioner Cole Benjamin Hooker is a state prisoner, currently confined at the Kinross Correctional Facility in Kincheloe, Michigan.

2.    On May 12, 2005, petitioner was convicted of four counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(a); and one count of second degree criminal sexual conduct (CSC-II), MICH. COMP. LAWS § 750.520c(1)(a), following a jury trial in the Grand Traverse County Circuit Court.  On June 10, 2005, he was sentenced to concurrent terms of 210-420 months' imprisonment on each of the CSC-I convictions and to a concurrent term of 120-180 months' imprisonment on the CSC-II conviction.

3.    Following his trial, petitioner filed a motion for new trial and for an evidentiary hearing in the trial court.  Petitioner raised claims of insufficient evidence, newly discovered evidence, and ineffective assistance of counsel.  On March 30, 2006, the trial court denied the motion.

4.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    THE PROSECUTOR'S SUBSTANTIAL AND MATERIAL MISCONDUCT CONSTITUTED PLAIN ERROR WHICH DENIED MR. HOOKER HIS FEDERAL AND STATE CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL.

A.    The prosecutor made an improper burden-shifting argument.

B.    The prosecutor attempted to unfairly bolster the complainant's

credibility by using her mother and counselor as human lie detectors.

C.   The prosecutor misrepresented the testimony of the complainant and her counselor to unfairly bolster the complainant's credibility.

D.   The cumulative effect of the prosecutor's misconduct denied Mr. Hooker due process of law.

II.   THE TRIAL JUDGE ABUSED HIS DISCRETION BY DENYING MR. HOOKER'S MOTION FOR A NEW TRIAL.

A.   A new trial should have been granted because the verdict was against the great weight of the evidence.

B.   A new trial should have been granted because newly discovered evidence indicates that the verdict may have been based on inaccurate and unreliable scientific evidence/expert testimony.

C.   A new trial should have been granted because the introduction of a videotaped interview the police conducted with Mr. Hooker which contained inadmissible and highly prejudicial statements and/or the failure to give cautionary/limiting instructions constitutes plain error which denied Mr. Hooker his due process right to a fair trial.

D.   A new trial should have been granted because Mr. Hooker did not receive the effective assistance of counsel at trial.

III.   REVERSAL IS REQUIRED BECAUSE TRIAL COUNSEL'S DEFICIENT PERFORMANCE DENIED MR. HOOKER HIS FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Hooker*, No. 263625, 2006 WL 3826791 (Mich. Ct. App. Dec. 28, 2006) (per curiam).

5.   Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Hooker*, 479 Mich. 860, 735 N.W.2d 251 (2007).

6.   Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 31, 2008. As grounds for the writ of habeas corpus, he raises the claims that he raised in

the state courts.

7.     Respondent filed his answer on October 7, 2008. He contends that petitioner's claims are without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the sexual assault of his niece, who testified that petitioner had sexually abused her on six separate occasions. The evidence adduced at trial was accurately summarized in the prosecutor's brief on appeal:

> The first three incidents of abuse took place in Benzie County and were allowed into evidence under MRE 404(b). The Victim first described an incident that occurred sometime during the summer of 2002. While at her grandparents' house, the Defendant took her hand and rubbed it up against his penis. T, 132. The Victim also described an incident that occurred at her house when she was in the sixth grade. On that occasion, the Defendant snuck into her bedroom, pulled the blankets and her pants down and rubbed her genital area, placing his fingers inside her vagina. T, 134-136. During the summer of 2003, the Victim was assaulted again. While at her Aunt Wilma's house, the Defendant took the victim for a walk. T, 136. In a secluded area in the woods, the Defendant laid down on the ground and convinced the Victim, who was 12 at the time, to perform oral sex on him. T, 137-138.
>
> The final three incidents of sexual abuse took place in Grand Traverse County and are the basis for the four counts with which the Defendant was tried and convicted. During the summer of 2003, the Defendant and the Victim rode their bikes from her home on Fewins Road to a lake near Cedar Hedge. T, 138. While swimming, the Defendant swam up behind the Victim, placed his hand inside her clothing and penetrated her vagina with his fingers. T, 141-142.
>
> The last two incidents occurred at the Defendant's residence at Oak Terrace Apartments in Traverse City. In the spring of 2004, the Victim and her younger brother Dakota spent the night at the Defendant's apartment. After his fiancé had gone to bed, the Defendant provided the Victim with alcohol, forced her to perform oral sex on him and had intercourse with her. T, 145, 147. On August 28, 2004, at his apartment, the Defendant bought alcohol and again allowed the Victim to drink. T, 156. At about 2 a.m., the Defendant kissed the Victim, performed oral sex on her and had intercourse with her. T, 156. Afterwards, the Defendant apologized and told the Victim that if she told anyone he would lose everything and he would kill himself. T, 158.
>
> The Victim also testified that at one point, she had written a letter to Trooper John Arthur stating that she fabricated the assault. T, 162. This letter was placed into evidence. T, 338. However, the Victim explained at trial that she wrote the letter because she was afraid that she would lose her relationship with her

grandmother (the Defendant's mother) and her cousins (the Defendant's children). T, 162-163.

The Victim's younger brother testified about a time where he and his sister stayed overnight at the Defendant's. T, 274. At some point, he went downstairs and saw the Defendant lying on top of his sister, "molesting her." T, 274-275. Terri Stebbins, the Victim's mother, testified that the Defendant called her October 9, 2004, after the police were contacted. The Defendant told Terri first that the Victim comes on to him and that he was drinking. He told Terri that he has an alcohol problem and that "he would like to think he didn't get into her pants." T, 220. The Victim's mother also testified that her daughter had been previously sexually abused by another relative who was now in prison. T, 223.

Trooper John Arthur testified that he spoke to the Defendant at the Michigan State Police Post. T, 340. The Defendant told Trooper Arthur that he had an alcohol problem and that if anything happened it was because of alcohol. He further admitted to blacking out and asked the Trooper, "I has sex with her?" This interview was videotaped and played in its entirety for the jury. T, 340. Trial counsel did not object to the tape. T, 340.

Dana LaCross testified that she had been counseling with the Victim for a number of years. T, 296. LaCross testified regarding the Victim's disclosure as well as her fear of losing her family and the recantation to Trooper Arthur. Ms. LaCross was not qualified as an expert witness, but testified that based on her counseling experience, she is not surprised when a sexual abuse victim recants. She also testified that victims of sexual abuse often blame themselves for the abuse. T, 303. Finally, she testified that it is not uncommon for abuse victims to go back to the perpetrator. T, 317.

The Defense presented a number of witnesses including the Defendant. The Defendant denied ever having sexual contact with [the Victim], but testified that he does not remember everything that happened the night of August 28, 2004, because he was intoxicated. T, 496. Defendant further testified that he occasionally lies when it is necessary to keep himself out of trouble. T, 500.

Pl.-Appellee's Br. on Appeal, in *People v. Hooker*, No. 263625 (Mich. Ct. App.), at 1-3.

Petitioner denied the allegations against him and claimed that the victim was lying. In support of this defense, petitioner elicited on cross-examination that the victim had made prior false allegations of sexual abuse. *See* Trial Tr., Vol. I, at 205, 215-16; Vol. II, at 353. Petitioner elicited from the victim's mother, brother, and counselor that the victim did not always tell the truth, and from his own witnesses that in their opinion or by reputation the victim was not a truthful person. *See id.*, Vol. I, at 224; Vol. II, at 286-87, 302, 377-78, 382, 405-06, 413-15, 428. Petitioner elicited from the victim that she knew what a penis looks like, and that petitioner's penis was "normal" and

circumcised. Petitioner, his mother, and his fiancé testified that petitioner's penis was not circumcised and was unusual because the urethra was not at the tip but on the underside of the head, and the defense introduced three photographs of petitioner's penis. *See id.*, Vol. I, at 207-10, 216-17; Vol. II, at 383-84, 428-29; Vol. III, at 464-67.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Prosecutorial Misconduct (Claim I)*

Petitioner first raises several prosecutorial misconduct claims. First, petitioner contends that the prosecutor committed misconduct by improperly shifting the burden of proof. Second, he contends that the prosecutor improperly bolstered the testimony of the victim, both by the presentation of bolstering testimony from other witnesses and through her comments during closing argument. Finally, petitioner contends that the cumulative effect of the prosecutor's misconduct deprived him of a fair trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.[2]

1.     *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the

---

[2]Petitioner also contends that the prosecutor committed misconduct by introducing his videotaped police interview. This claim is more appropriately addressed as an evidentiary claim, and is discussed in part G, *infra*. Addressing specifically only petitioner's claim relating to the introduction of his videotaped statement, respondent argues that petitioner's prosecutorial misconduct claim is barred by petitioner's procedural default because of his failure to object. Because petitioner contends that counsel was ineffective for failing to object, it is necessary to discuss the merits of these claims.

degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2. *Analysis*

a. *Shifting Burden of Proof*

Petitioner first contends that the prosecutor committed misconduct by improperly shifting the burden of proof to him to prove his innocence. Specifically, during opening statement, the prosecutor stated:

> [T]he judge is going to tell you that if [the victim] testifies and you believe her testimony beyond a reasonable doubt, and her testimony satisfies those elements, that that's enough. That's sufficient evidence to find the Defendant guilty. So first of all, keep in mind that in order to find the Defendant not guilty you have to decide that you don't believe [the victim].

Trial Tr., Vol. I, at 105. Reviewing the comments for plain error, the Michigan Court of Appeals rejected petitioner's claim. The court reasoned:

> The prosecutor followed the cited remarks with an examination of how the complainant's story was supported by the evidence. By asking the jury to consider the credibility of the complainant, the prosecutor did not suggest or imply that the burden of proof was on defendant to prove the complainant had lied. Indeed, nothing in the prosecutor's statement implicitly suggested that the burden of proof was on defendant. Given that the complainant's testimony and defendant's testimony were directly contradictory, it is logical to state that in order to find defendant not guilty, the complainant has to be disbelieved.

*Hooker*, 2006 WL 3826791, at *1, slip op. at 2. The Court should conclude that this determination was reasonable.

The prosecutor's comment was "technically erroneous" because "[t]he jury did not need to

disbelieve [the victim] or any other witness to acquit [petitioner]. Reasonable doubt about [petitioner's] guilt was all that was required." *United States v. Venable*, 269 F.3d 1086, 1090 (D.C. Cir. 2001); *see also*, *United States v. Cornett*, 232 F.3d 570, 574 (7th Cir. 2000). Nevertheless, petitioner cannot show that the comment deprived him of a fair trial. The prosecutor's comment that the victim's testimony, standing alone, can constitute sufficient evidence to support a conviction was an accurate statement of the law. *See People v. Lemmon*, 456 Mich. 625, 642 n.22, 576 N.W.2d 129, 137 n.22 (1998) ("It is a well established rule that a jury may convict on the uncorroborated evidence of a CSC victim."); MICH. COMP. LAWS § 750.520h ("The testimony of a victim need not be corroborated in prosecutions under [the criminal sexual conduct statutes]."). Both preceding and following the challenged comment, the prosecutor engaged in an extensive discussion of the factors and corroborative evidence bearing on the victim's credibility. *See* Trial Tr., Vol. I, at 104-08. Nothing in the prosecutor's statement explicitly suggested to the jury that petitioner bore the burden of proving that the victim lied. In these circumstances, the prosecutor's comment was not so prejudicial as to deprive petitioner of a fair trial. *See Venable*, 269 F.3d at 1090-91. Further, "any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof." *Stewart v. Booker*, No. 07-14081, 2009 WL 973343, at *5 (E.D. Mich. Apr. 9, 2009) (Cohn, J.) (citing *Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir.2002)); *see also*, *Venable*, 269 F.3d at 1091; *Cornett*, 232 F.3d at 575. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Bolstering

Petitioner next contends that the prosecutor improperly bolstered the testimony of the victim, both through the presentation of testimony supporting the victim's credibility and through comments during closing argument. The Court should conclude that petitioner is not entitled to habeas relief

on his bolstering claims.

Petitioner first contends that the prosecutor improperly bolstered the testimony of the victim by eliciting testimony from the victim's mother and counselor regarding the victim's truthfulness. On examination of the mother, the prosecutor elicited that the victim was not always truthful, but that the victim was not a very good liar and the mother could usually tell when the victim was lying. *See* Trial Tr., Vol. I, at 224-25. The prosecutor then asked the mother, "[w]ith regard to this incident, what was your first reaction when [the victim] first told you?" *Id.* at 225. The trial court sustained defense counsel's objection to this question, and the mother did not answer the question. Later, during the testimony of the counselor, the prosecutor elicited that the victim had embellished her stories to the counselor but then quickly recanted, and that she had not recanted her allegations against petitioner. *See id.*, Vol. II, at 301-02. Petitioner's argument raises a claim of evidentiary bolstering. This claim fails, for two reasons.

First, it is far from clear that the bolstering testimony was improperly admitted as a matter of state law. In some instances, the testimony of a victim's prior, consistent rape allegations may be relevant and admissible to rebut a defendant's claim that the victim is fabricating the charges. *See People v. Sabin*, 463 Mich. 43, 69 n.12, 614 N.W.2d 888, 902 n.12 (2000); *People v. Starr*, 457 Mich. 490, 501-02, 577 N.W.2d 673, 678 (1998); *cf.* MICH. R. EVID. 801(d)(1)(B) (prior consistent statement not hearsay if the declarant testifies at trial and that statement is offered to rebut a charge of recent fabrication). Further, because petitioner accused the victim of lying, evidence of the victim's character for truthfulness was admissible under MICH. R. EVID. 608(a), as noted by the court of appeals. *See Hooker*, 2006 WL 3826791, at *2, slip op. at 2. Second, even if the evidence was inadmissible as a matter of state law, or as a matter of federal evidence law, petitioner cannot show that the introduction of this evidence deprived him of due process or any constitutional right.

11

On the contrary, "[b]olstering claims have been (expressly) held not to be cognizable on federal habeas review." *Diaz v. Greiner*, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000); *cf. Regan v. Hoffner*, 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002) (Friedman, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner also contends that, during closing argument, the prosecutor improperly bolstered the testimony of the victim by misrepresenting the testimony of the victim and the counselor. During argument, the prosecutor stated with regards to the victim's initially having only reported one incident of sexual abuse:

> If someone makes up a story or they're going to accuse someone of something, they make up one incident and stick to that story. But when you have a sexual assault victim someone who's been repeatedly assaulted, as Dana LaCross testified to, it comes back in bits and pieces and they may disclose a little bit at a time. They have to get comfortable talking about it, dealing with themselves, before they can disclose more.

Trial Tr., Vol. III, at 517. The Court should conclude that this comment was not improper.

Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[3] Here, the prosecutor neither implied that she had special facts not in front of the jury nor suggested a personal belief in the witnesses' credibility. Rather, the prosecutor was arguing that there was a rational explanation, based on the trial evidence, for the victim's inconsistent reports of the sexual

---

[3]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

assaults. This was not improper vouching. *See United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998) ("[W]here a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury that the credibility of the witness is based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching."); *see also*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Cumulative Effect

Petitioner also contends that he was denied a fair trial by the cumulative effect of the prosecutor's misconduct. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). As discussed above, the only improper comment by the prosecutor was the comment made during opening statement, and that comment was not sufficiently prejudicial to deprive petitioner of a fair trial. There are no other instances of improper prosecutorial conduct to cumulate with this comment, and thus petitioner's cumulative error claim is without merit.

E.    *Sufficiency of the Evidence (Claim II.A)*

In his second claim, petitioner contends that the trial court erred in denying his motion for

a new trial. That motion raised several different claims of error, and thus they are addressed separately in this Report. In his first new trial motion claim, petitioner argued that the verdict was against the great weight of the evidence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.     *Great Weight of the Evidence*

To the extent petitioner contends he is entitled to habeas relief because the verdict was against the weight of the evidence, petitioner's claim is not cognizable on habeas review. It is well established that habeas review is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*. Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove

all the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

2.    *Sufficiency of the Evidence*

*a. Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197,

211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

## b. Analysis

Here, petitioner does not contend that the evidence was insufficient with respect to any particular element of the crimes charged. Likewise, petitioner does not argue, nor could he, that the victim's testimony, if believed by the jury, was insufficient to establish his guilt beyond a reasonable doubt. Michigan law explicitly provides that "[t]he testimony of a victim need not be corroborated in prosecutions under [the criminal sexual conduct statutes]." MICH. COMP. LAWS § 750.520h. Thus, "[i]t is a well established rule that a jury may convict on the uncorroborated evidence of a CSC victim." *People v. Lemmon*, 456 Mich. 625, 642 n.22, 576 N.W.2d 129, 137 n.22 (1998). This rule comports with the more general rule in sufficiency of the evidence cases that the testimony of the victim standing alone is sufficient evidence to convict a defendant beyond a reasonable doubt. *See, e.g.*, *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir. 1990); *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995). "Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict." *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005).

Rather, petitioner contends that the evidence was insufficient because the victim's testimony was inconsistent and not credible, and because her testimony was not supported by the evidence and was contradicted by other testimony presented at trial. These arguments are without merit. It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*,

*United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). Here, the victim's testimony, if believed, established the necessary elements of the offenses charged against petitioner. Whether to believe the victim was for the jury, not for the Michigan Court of Appeals or for this Court on habeas review. Thus, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Newly Discovered Evidence (Claim II.B)*

In his second motion for new trial claim, petitioner contends that he is entitled to a new trial based on newly discovered evidence of his innocence. Specifically, petitioner points to four scholarly articles which he contends establish, contrary to LaCross's testimony at trial, that victims of sexual abuse do not typically delay full disclosure after the first report of sexual abuse and do not recant their allegations after making them. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schulup*, 513 U.S. at 327 (internal citation and quotation omitted).

The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on the evidence

adduced at trial. If he could, federal habeas review would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid. *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo*[.]"). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Here, petitioner's newly discovered evidence does not directly go to his factual guilt or innocence, but only to impeaching the testimony of LaCross regarding the typical behavior of sexual abuse victims in general. Such newly discovered impeachment evidence does not provide sufficient evidence of actual innocence to overcome a procedural bar, much less does it provide sufficient evidence to support a free-standing innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Introduction of Videotaped Statement (Claim II.C)*

In his third motion for new trial claim, petitioner contends that he was deprived of a fair trial

by the introduction of his entire videotaped interview with the police. Petitioner contends that the introduction of the entire interview allowed the introduction of inadmissible statements made by the officer during the course of the interview, including statements that petitioner had himself been abused as a child, that the victim's statements had been consistent, that the office believed the victim's allegations, and that the judge could take into account the abuse suffered by petitioner in sentencing him. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.

1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2. *Analysis*

Here, the most damaging evidence to come from the unedited videotape was the officer's statement to petitioner that the victim's allegations were consistent. Contrary to petitioner's argument, however, this evidence was admissible. As noted above, testimony of the victim's prior, consistent rape allegations was relevant and admissible to rebut a defendant's claim that the victim is fabricating the charges. *See People v. Sabin*, 463 Mich. 43, 69 n.12, 614 N.W.2d 888, 902 n.12 (2000); *People v. Starr*, 457 Mich. 490, 501-02, 577 N.W.2d 673, 678 (1998); *cf*. Mich. R. Evid. 801(d)(1)(B). Thus, petitioner cannot show that he was denied a fair trial by the introduction of this portion of the unedited videotape. With respect to the remaining statements made by the officer in the video, even if they were inadmissible petitioner cannot show that they deprived him of a fair trial. The statements regarding petitioner's own victimization could not have prejudiced the jury against petitioner, and the jury would have understood the officer's comment regarding the victim's truthfulness not as direct testimony of this fact, but as a technique to elicit petitioner's statement in the context of an adversarial interview. Nor is there any evidence that the officer discussed

sentencing ramifications with petitioner beyond noting that the judge could be lenient in sentencing. Petitioner has failed to demonstrate that the introduction of these collateral matters deprived him of a fair trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Ineffective Assistance of Counsel (Claims II.D & III)*

Petitioner next contends that his trial counsel was constitutionally ineffective in a number of respects. Specifically, petitioner contends that counsel was ineffective for failing to: (1) object to the introduction of the unedited videotape of his interview; (2) object to LaCross's testimony; and (3) object to the prosecutorial misconduct at his trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689;

*see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2. *Analysis*

a. *Failure to Object to Introduction of Videotaped Statement*

Petitioner first contends that counsel was ineffective for failing to object to the introduction of the entire videotape of his police interview. As discussed above, however, petitioner has failed to show that the admission of this evidence was sufficiently prejudicial to deny him due process of law. It therefore follows that petitioner cannot establish that he was prejudiced by counsel's failure to object. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960-61 (E.D. Mo. 1999), *aff'd*, 1 Fed. Appx. 567 (8th Cir. 2001); *Jamison v. Collins*, 100 F. Supp. 2d 647, 728 (S.D. Ohio 2000) ("If the very things that Petitioner argues his counsel should have objected to, or asked for, do not reach violations of constitutional proportions, then his counsel's failure to object to, or ask for, these things did not prejudice Petitioner."), *aff'd*, 291 F.3d 380 (6th Cir. 2002). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

b. *Failure to Object to Expert Testimony*

Petitioner next contends that counsel was ineffective for failing to object to LaCross's testimony on the basis of the scholarly articles cited in his newly discovered evidence claim. He

contends that this evidence would have allowed counsel to object to LaCross's testimony on the basis that it did not meet the reliability requirements for expert testimony. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court held that a court faced with a proffer of scientific evidence must undertake "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. Effective January 1, 2004, Michigan amended Rule 702 to mirror the federal rule. As the Michigan Supreme Court has explained, this amendment to Rule 702 explicitly incorporates the reliability standards identified by the United States Supreme Court in *Daubert*. *See Gilbert v. DamilerChrysler Corp.*, 470 Mich. 749, 781, 685 N.W.2d 391, 408 (2004). Here, however, LaCross was not called as an expert witness. Rather, LaCross was presented as a fact witness based on her repeated contacts with the victim both before and after the assaults committed by petitioner. It is true that she testified as to typical responses of sexual abuse victims based on her own experiences with those victims, but this testimony was not based on any scientific methodology or technique; rather it was based on her personal experience. This testimony, based on specialized, rather than scientific, knowledge and not based on any inference or assertion derived from a scientific method, was not subject to the scientific validity requirement of Rule 702 and *Daubert*. *See United States v. Bighead*, 128 F.3d 1329, 1330 (9th Cir. 1997). Or, put another way, in a case involving social science testimony based on an expert's personal experience, that personal experience alone provides sufficient reliability for admission under *Daubert*. *See United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006). In either event, petitioner cannot establish a reasonable probability that counsel's presentation of these articles would have rendered LaCross's testimony inadmissible. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Object to Prosecutorial Misconduct

Finally, petitioner contends that counsel was ineffective for failing to object to the prosecutorial misconduct at his trial. As explained above, however, most of petitioner's prosecutorial misconduct claims are without merit, and thus any objection by counsel would have been meritless. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Further, although the prosecutor's comment that the jury had to find that the victim lied in order to find petitioner not guilty was improper, it was not sufficiently prejudicial to have deprived petitioner of a fair trial, and thus petitioner cannot establish that he was prejudiced by counsel's failure to object. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### I. *Recommendation Regarding Certificate of Appealability*

#### 1. *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S.

880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

Here, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons explained above.  In light of the ambiguous nature of the prosecutor's burden-shifting comment and the trial court's correct instructions on the burden of proof, the conclusion that petitioner was not prejudiced by the prosecutor's burden-shifting statement is not reasonably debatable.  Further, for the reasons explained in connection with those claims, the conclusion that the other instances identified by petitioner did not constitute misconduct is not reasonably debatable. Petitioner's weight of the evidence claim clearly raises an issue of state law, and the resolution of his sufficiency of the evidence claim is not debatable in light of the victim's testimony which, if believed, establishes all the elements of the offenses for which petitioner was convicted.  It is likewise not debatable that petitioner has failed to meet the high threshhold showing of prejudice required for petitioner to obtain relief on his evidentiary claim relating to the video of the police interview.  Similarly, it is not debatable that petitioner's newly discovered evidence claim does not present a claim for relief cognizable on habeas review.  Finally, the resolution of petitioner's ineffective assistance of counsel claims is not debatable, for the reasons explained above. Accordingly, the Court should deny petitioner a certificate of appealability.

J.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 5/12/10

| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on May 12, 2010. |
| :--- |
| s/Eddrey Butts |
| Case Manager |

28